# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DASHAWN WILSON COMBS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MOORE, *et al.*,<br><br>　　　　Defendants. | Case No.  1:19-cv-00390-NONE-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES<br><br>(ECF No. 23)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**FINDINGS AND RECOMMENDATIONS**

**I.	Background**

Plaintiff Dashawn Wilson Combs ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's first amended complaint against Defendants Moore, Ruelas, Brubaker, Ronquillo, and Perez for excessive force in violation of the Eighth Amendment and for deliberate indifference to medical needs in violation of the Eighth Amendment.

On January 16, 2020, Defendants filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his prisoner administrative remedies as required by the Prisoner Litigation Reform Act.[1]  Fed. R. Civ. P. 56(c), Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir.

---

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 23-1.)

1

1  2014) (en banc), cert. denied, 135 S. Ct. 403 (2014).  (ECF No. 23.)  On January 31, 2020,

2  Plaintiff filed his opposition to the motion for summary judgment.  (ECF No. 27.)  Defendants

3  filed a reply on February 10, 2020.  (ECF No. 29.)  Plaintiff also filed an opposition on February

4  14, 2020, which the Court will construe as a surreply.  (ECF No. 32.)

5  The motion for summary judgment is deemed submitted.  Local Rule 230(l).

## II. Plaintiff's Surreply

7  Generally, parties do not have the right to file sur-replies, and motions are deemed

8  submitted when the time to reply has expired.  Local Rule 230(l).  The Court generally views

9  motions for leave to file sur-replies with disfavor.  Hill v. England, No. CVF05869 REC TAG,

10  2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes–Benz USA, LLC, 366 F.

11  Supp. 2d 1190, 1197 (N.D. Ga. 2005)).  However, district courts have the discretion to either

12  permit or preclude a sur-reply.  See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195,

13  1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable

14  surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district

15  court did not abuse discretion in denying leave to file sur-reply where it did not consider new

16  evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply

17  may not be considered without giving the non-movant an opportunity to respond).  In this Circuit,

18  courts are required to afford *pro se* litigants additional leniency.  E.g., Wilhelm v. Rotman, 680

19  F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v.

20  Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Thomas v. Ponder, 611 F.3d 1144, 1150 (9th

21  Cir. 2010).

22  Here, Plaintiff did not seek leave of Court before filing his sur-reply.  However, in light of

23  Defendants' apparent non-opposition and Plaintiff's *pro se* status, the Court will exercise its

24  discretion to not strike the evidence.  The Court will consider the evidence presented.

## III. Legal Standards

### A. Statutory Exhaustion Requirement

27  Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action

28  shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

2

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007); Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. Williams, 775 F.3d at 1191 (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendants. Id. (quotation marks omitted).

### B.     Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible

evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

**IV.    Discussion**

**A.    Summary of CDCR's Administrative Review Process**

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1. Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." Id. at § 3084.1(a).

The process is initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal. Id. at § 3084.2(a). In the appeal form, prisoners must list all staff members involved and describe their involvement in the issue. Id. at § 3084.2(a)(3). If the inmate does not have the requested identifying information about the staff member, he must provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member in question. Id.

///

Three levels of review are involved—a first level review, a second level review and a third level review. Id. at §§ 3084.5(c)–(e), 3084.7. Bypassing a level of review may result in rejection of the appeal. Id. at § 3084.6(b)(15). Under the PLRA, a prisoner has exhausted his administrative remedies when he receives a decision at the third level. See Barry v. Ratelle, 985 F.Supp. 1235, 1237–38 (S.D. Cal. 1997).

**B.    Summary of Allegations in First Amended Complaint**

Plaintiff is currently housed at California Correctional Institution in Tehachapi, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at Kern Valley State Prison in Delano, California. Plaintiff names the following defendants: (1) Correctional Lieutenant Moore; (2) Correctional Lieutenant Ruelas; (3) Correctional Sergeant Brubaker; (4) Correctional Officer Ronquillo; and (5) Correctional Officer Perez.

Plaintiff alleges that on November 27, 2018, Plaintiff was having major pains in his left hand from a previous break during a fight. On November 27, 2018, Plaintiff went man down because of the pain in his hand and asked the tower officer to call for medical attention because his hand was leaking pus. The tower officer called medical many times and later, the officer let Plaintiff out to go to medical. As Plaintiff was walking to medical, the C-yard patio security gate officer asked Plaintiff where he was going, and Plaintiff told her to medical. She told him to wait at the C-yard gate. As he was waiting, Defendant Brubaker came out of the C-yard program office and told Plaintiff to go back to his cell. Plaintiff told Brubaker of his hand condition and that he had permission from the tower officer to go see medical.

Defendant Brubaker became upset and told Plaintiff to go back to his building. Plaintiff said no, and he wanted to talk to a Lieutenant. Defendant Brubaker called on his radio, and Defendant Perez came out of the medical building and Ms. Ventura also came out to where Plaintiff and Brubaker were. Defendant Brubaker walked up to Plaintiff and "socked" Plaintiff in his mouth, and slung him to the ground by his right arm. Defendant Perez jumped on the left side of Plaintiff's lower back with her knee and grabbed the broken hand twisting it behind Plaintiff's back. Plaintiff was put in handcuffs, and they lifted him by the handcuffs behind his back. Plaintiff was pulled up off the ground by the handcuffs and was put in a cage in the C-yard

1  program office.

2  Defendant Brubaker came back with Defendant Perez and Defendants Moore, Ronquillo, and Ruelas.  They were making comments to him and laughing at Plaintiff and threatened him. Both Lieutenants Moore and Ruelas grabbed Plaintiff by his shirt and slammed him against the cage wall several times and socked Plaintiff in the face.  They took him out of the cage, and Plaintiff was angry and called them names.  He was slammed on the ground on his back by Moore and Ruelas and his left hand did a "pop."  Defendant Perez grabbed Plaintiff by the neck, choking him by placing her left knee in his stomach and with Defendant Brubaker holding Plaintiff's right shoulder down with his right knee.  Thinking he might die, Plaintiff began to struggle, but he passed out.  He awoke being wheeled in a wheelchair, with blood all over his clothes.

Brubaker and Perez "snatched" him out of the wheelchair, but Defendant Ronquillo grabbed the bottom of the leg cuffs chain, pulled so that Plaintiff fell forward hitting the center of his chest on the day room wooden bench.  They then took him to his cell.  There, Ronquillo snatched both of his legs one by one while Sergeant Brubaker and Perez held both of his arms so that Plaintiff fell forward hitting his chin on the ground.  They put their knees into his lower back holding his arms to take off the handcuffs.  They left him in his cell, bleeding without medical treatment.  Plaintiff passed out from the pain.  He did not get treatment until 2 days later.

**C.    Undisputed Material Facts (UMF)[2]**

1. At all times relevant to the allegations in the amended complaint, Plaintiff DaShawn Combs (AI-9045) was a state inmate incarcerated at Kern Valley State Prison (KVSP) in Delano, California.  (Am. Compl. (ECF No. 15), p. 3.)
2. Plaintiff filed the complaint on February 25, 2019.  (ECF No. 1.)
3. Plaintiff filed the amended complaint on September 16, 2019.  (ECF No. 15.)

---

[2] ECF No. 23-3.  Plaintiff did not provide a separate statement of undisputed facts in his opposition.  Local Rule 260(a).  As a result, Defendants' Statement of Undisputed Facts in support of their motion for summary judgment is accepted except where brought into dispute by Plaintiff's verified First Amended Complaint.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

4. In both the complaint and amended complaint, Plaintiff claims that on November 27, 2018, correctional staff members utilized excessive force and denied him medical treatment for a hand injury. (ECF Nos. 1, 15, 16.)

5. Plaintiff contends staff would not allow him to proceed to the medical facility for a broken hand he sustained in a fight six days earlier. (ECF No. 15, p. 3.)

6. KVSP has an inmate grievance process for custody appeals, which contains three levels of review. An inmate must process his grievance through the third level of review to exhaust his administrative remedies. (Leyva Decl., ¶¶ 1–3, 7.)

7. From the month of alleged conduct in the complaint (November 2018) through the date Plaintiff filed the complaint (February 2019), Plaintiff failed to process a single appeal for review within this timeframe. (Leyva Decl., ¶ 9.)

**D.     Discussion**

1.     Parties' Positions

Defendants argue that Plaintiff failed to submit a single grievance regarding his claims against Defendants. In addition, Defendants point out that Plaintiff admitted in the first amended complaint that he did not complete the exhaustion process, where Plaintiff alleges that he filed two 602 complaints about this matter and was told by Defendants Moore and Brubaker that he'll never get his grievance processed and should take the TVs, radios, and canteen they were offering him to drop the matter. Plaintiff further alleged that when he told them no and that he was only settling out in the courts, he was threatened. (ECF No. 15, p. 2.) Defendants argue that even if the Court reviews this proposed excuse to exhaustion, the excuse is unavailing because Defendants Brubaker and Moore do not have access to the locked grievance box, nor did they threaten Plaintiff in an effort to get him to withdraw his alleged grievance. (Brubaker Decl., ¶ 3; Moore Decl., ¶ 3.) Further, Plaintiff cannot present any evidence corroborating this alleged set of circumstances. Finally, Defendants argue that Plaintiff's appeal history reveals that he submitted appeals on other issues at KVSP, even after he filed this lawsuit, contradicting Plaintiff's assertion that his speech was chilled.

///

7

1          Plaintiff argues in opposition that he did try to exhaust his administrative remedies at
2   KVSP, and made a complaint to mental health on December 27, 2018 about the Defendants not
3   letting him exhaust.  (ECF No. 27, p. 4.)  Plaintiff argues that he was unable to exhaust by being
4   held back from his rights and he could not get help from anyone in the institution.  Plaintiff states
5   that he tried to exhaust again after the deadline was past, and was given appeal log number
6   KVSP-O-19-00972.  Plaintiff states that he submitted this 602 form to make known his attempts
7   with KVSP for fair justice of exhaustion and was cancelled.  Finally, Plaintiff argues that he nor
8   any of the Defendants can show the Court that he did or did not attempt to exhaust his remedies
9   with KVSP, and therefore the Court should process this case forward for a jury trial.

10         In reply, Defendants argue that Plaintiff's filing of a late grievance regarding these issues,
11  after he filed this lawsuit, demonstrates that Plaintiff failed to use an open and available grievance
12  system.  Furthermore, Defendants contend that Plaintiff's excuse that he reported his complaints
13  to mental health staff is insufficient to excuse exhaustion, as Plaintiff was required to comply
14  with the administrative requirements in place at the prison, rather than attempting to circumvent
15  the exhaustion requirement by reporting the incident through a different channel.

16         Plaintiff's surreply largely repeats the arguments from his opposition.  Plaintiff reiterates
17  that he attempted to exhaust his remedies for these claims but never got any log numbers or
18  responses back from the appeal coordinator, and because he was having these problems he made
19  complaints to mental health and other officers for help and more guidance to get his remedies
20  exhausted.  However, that was not successful, and during those attempts to exhaust Plaintiff was
21  stopped and threatened by officers, which he made complaints about as well.  Plaintiff attempted
22  to exhaust his remedies once again even after the deadline was up, but was denied because the
23  deadline had passed.  Plaintiff believes that he has exhausted his remedies to the best of his
24  abilities.

25              2.       Analysis

26      All of the claims at issue in this suit arose before the filing of the original complaint, and
27  therefore all were required to be exhausted prior to Plaintiff initiating this action on February 25,
28  2019.  There is no dispute that Plaintiff failed to successfully file any grievance related to these

1  claims before filing the complaint in this action. (UMF 7.)

2  Rather, Plaintiff alleges that he attempted to file grievances before the deadline expired, but his grievances were not processed or given log numbers. When he could not get any of his grievances processed, Plaintiff alleges that he made a complaint to mental health staff. In support of this argument, Plaintiff provides only his own allegations[3] and a copy of his medical records where mental health staff noted that Plaintiff "reported having ongoing conflict with custody leading him to stop writing 602 and refuse medications." (ECF No. 27, p. 4.) Plaintiff further asserts in the first amended complaint that he filed two 602 complaints about this matter, and was pulled out of his cell at night to go to the program office, where Defendants Moore and Brubaker told him that he would never get his grievances processed, offered Plaintiff a bribe in exchange for dropping the matter, and threatened Plaintiff when he told them no. (ECF No. 15, p. 2.)

Defendants, on the other hand, have provided declarations from both Defendants Brubaker and Moore, signed under penalty of perjury, denying the allegations that they pulled Plaintiff from his cell in the middle of the night to discuss two CDCR Form 602s he submitted. (ECF Nos. 23-4, 23-5.)

There is no evidence before the Court, aside from Plaintiff's own allegations, that he ever attempted to submit any grievances related to the claims in this action prior to the filing of this lawsuit. The only evidence Plaintiff has submitted to demonstrate that he faced any barriers to exhausting his administrative remedies—his medical records—indicate only that Plaintiff reported ongoing conflict with custody staff, "leading him to stop writing 602." (ECF No. 27, p. 4.) However, this note is not sufficient to support the argument that Plaintiff had previously attempted to file any 602s related to this specific incident, or that he had been threatened by any Defendant for filing grievances related to this incident. Finally, there is evidence to support the conclusion that Plaintiff did not feel threatened or unable to utilize the grievance process, as he continued to file grievances after the filing of this lawsuit. (ECF No. 23-6, p. 7.)

---

[3] The Court notes that while Plaintiff's first amended complaint is signed under penalty of perjury, the opposition and surreply are not, and therefore cannot be considered as evidence. See Johnson v. Meltzer, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (verified motion may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

Plaintiff has failed to present more than his own allegations, unsupported by evidence in the record, to demonstrate that he was unable to exhaust his administrative remedies. See Rivera v. AMTRAK, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

For these reasons, the Court finds that Plaintiff has not exhausted his administrative remedies with regard to his claims against Defendants and that he should not be excused from the failure to exhaust.

**V.     Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment for failure to exhaust, (ECF No. 23), be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 9, 2020**             /s/ Barbara A. McAuliffe            
                                                                     UNITED STATES MAGISTRATE JUDGE